1  Kirk A. Pasich (94242)
   pasichk@dicksteinshapiro.com
2  Sandra Smith Thayer (200294)
   thayers@dicksteinshapiro.com
3  Fiona Chaney (227725)
   chaneyf@dicksteinshapiro.com
4  DICKSTEIN SHAPIRO LLP
   2049 Century Park East, Suite 700
5  Los Angeles, CA  90067-3109
   Telephone: (310) 772-8300
6  Facsimile: (310) 772-8301
7
8  Attorneys for Plaintiff

9                  **UNITED STATES DISTRICT COURT**

10               **CENTRAL DISTRICT OF CALIFORNIA**

11

12  SEMPRA ENERGY, a California       | CASE NO. 2:14-cv-7984
    corporation,
13                                     | **COMPLAINT FOR BREACH OF**
                Plaintiff,             | **CONTRACT AND TORTIOUS**
14                                     | **BREACH OF THE IMPLIED**
         v.                            | **COVENANT OF GOOD FAITH**
15                                     | **AND FAIR DEALING**
16  ASSOCIATED ELECTRIC & GAS
    INSURANCE SERVICES LIMITED, a     | **DEMAND FOR JURY TRIAL**
17  Bermuda mutual insurance company; and
    CENTURY INDEMNITY COMPANY, as
18  Successor to CCI Insurance Company, as
    Successor to Insurance Company of North
19  America, a Pennsylvania corporation,
20              Defendants.
21

22

23

24

25

26

27

28

**DICKSTEIN**
**SHAPIRO LLP**

COMPLAINT

DOCSLA-122311

Plaintiff Sempra Energy complains of defendants and alleges as follows:

## NATURE OF THIS ACTION

1.     Sempra Energy, Central Plants, Inc., Pacific Enterprises, Sempra Energy Global Enterprises, and Sempra Energy Solutions (collectively, the "Sempra entities") were named among the defendants in lawsuits brought by more than 900 individuals alleging injuries from exposures to toxins as a result of the operation of an oil well at Beverly Hills High School ("BHHS") and an adjacent district energy plant operated by certain of the Sempra entities (the "*BHHS* litigation"). These plaintiffs claimed that they suffered injuries from the plant commencing at least as early as 1965 and continuing thereafter.

2.     The Sempra entities notified the defendants of the *BHHS* litigation and asked them to defend and indemnify the Sempra entities in the *BHHS* litigation. However, instead of honoring their duties under their respective policies and immediately defending the Sempra entities in the *BHHS* litigation, the defendants breached their duties, forcing the Sempra entities to pay for the lion's share of both the defense and settlement of the *BHHS* litigation.  Therefore, Sempra Energy has initiated this lawsuit to collect the millions of dollars in defense fees and costs incurred in, and the unpaid portion of the settlement of, the *BHHS* litigation.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because all of the parties are corporations or jurisdictional entities subject to personal jurisdiction in this district and, thus, reside in this district.

DICKSTEIN
SHAPIRO LLP

1
COMPLAINT

## THE PARTIES

### Sempra

5.      Sempra Energy is a California corporation with its principal place of business in the County of San Diego and the State of California.  Sempra Energy is the parent company of Pacific Enterprises, formerly known as Pacific Lighting Corporation, Sempra Energy Global Enterprises, and Sempra Global.  Sempra Energy also is the successor-in-interest to the rights and obligations of Central Plants, Inc. and Sempra Energy Solutions under the insurance policies at issue here. Sempra Energy is authorized to bring and brings this action against the defendants, asserting all of the rights of the Sempra entities under the insurance policies at issue.

6.      The *BHHS* plaintiffs alleged claims against Central Plants as the operator of the Central Plant, a district energy plant (a plant that provides steam, chilled water and hot water for the heating and cooling systems of local buildings) that began operations in or around December 1965, as well as against Sempra Energy, Sempra Energy Global Enterprises, Pacific Enterprises, and Sempra Energy Solutions based on alleged alter-ego liability.

7.      As described in paragraphs 11 through 23 below, each of these Sempra entities is either a Named Insured or an Insured under the insurance policies at issue herein.

### The Defendants

8.      Associated Electric & Gas Services Limited ("AEGIS") is a mutual insurance company organized under the laws of Bermuda with its principal place of business in Jersey City, New Jersey, authorized to transact, and transacting, business in the State of California and the County of Los Angeles.

9.      Century Indemnity Company is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania, authorized to transact, and transacting, business in the State of California and the County of Los Angeles.  It is the successor to CCI Insurance Company, the successor to Insurance Company of North America ("INA").  Sempra Energy is informed and believes, and on that basis

alleges, that Century has succeeded to obligations under certain insurance policies issued to Pacific Lighting and/or Central Plants by INA.

## THE INSURANCE POLICIES

10.     At least from September 1, 1963, to September 1, 1986, Century (through its predecessor INA) and AEGIS (collectively, the "Insurers") provided insurance coverage to the Sempra entities through a series of general liability insurance policies (the "Policies"), each providing coverage for claims and suits against the Sempra entities for personal injury or bodily injury.

### The AEGIS Policies (1980-1986)

11.     AEGIS issued multiple policies to various of the Sempra entities, including three policies from September 1, 1980, to September 1, 1986:

- Policy No. 190A, in effect from September 1, 1980, to July 1, 1983, with a per occurrence limit of $25,000,000, excess of a $250,000 self-insured retention ("SIR.")  A true and correct copy of Policy No. 190A is attached hereto as Exhibit A and incorporated by reference.

- Policy No. 191A, in effect from September 1, 1980, to September 1, 1984, with a per occurrence limit of $15,000,000, excess of a $100,000 SIR.  A true and correct copy of Policy No. 191A is attached hereto as Exhibit B and incorporated by reference.

- Policy No. 190NJ, in effect from July 1, 1983, to September 1, 1985, with a per occurrence limit of $25,000,000, excess of a $250,000 SIR.  A true and correct copy of Policy No. 190NJ is attached hereto as Exhibit C and incorporated by reference.

- Policy No. 191NJ, in effect from July 1, 1983, to September 1, 1985, with a per occurrence limit of $25,000,000, excess of a $100,000 SIR.  A true and correct copy of Policy No. 191NJ is attached hereto as Exhibit D and incorporated by reference.

- Policy No. 190CNJ, in effect from September 1, 1985, to September 1, 1986, with a per occurrence limit of $5,000,000, excess of a $500,000 SIR for pollution liability claims. A true and correct copy of Policy No. 190CNJ is attached hereto as Exhibit E and incorporated by reference

- Policy No. 191CNJ, in effect from September 1, 1985, to September 1, 1986, with a per occurrence limit of $5,000,000, excess of a $500,000 SIR for pollution liability claims. A true and correct copy of Policy No. 191CNJ is attached hereto as Exhibit F and incorporated by reference.

12. Policy Nos. 190A, 190NJ, and 190CNJ define "Named Insured" to include "Pacific Lighting Corporation . . . and any utility related subsidiary company in line of corporate descent from such organization(s)." Ex. A, End. 1; Ex. C, End. 1; Ex. E, End 1.

13. Policy Nos. 191A, 191NJ and 191CNJ define "Named Insured" to include "Pacific Lighting Corporation . . . and any non-utility related subsidiary company in line of corporate descent from such organization(s)." Ex. B, End. 1; Ex. D, End. 1; Ex. F, End. 1.

14. The AEGIS policies obligate AEGIS to pay for "ULTIMATE NET LOSS," including defense fees and costs. Specifically, the AEGIS policies define "ULTIMATE NET LOSS" as

> The total of the following sums with respect to each OCCURRENCE or WRONGFUL ACT to which this POLICY applies;
>
> (1) all sums which the INSURED shall become legally obligated to pay as damages either by adjudication or compromise with the consent of the COMPANY, after making proper deductions for all recoveries and salvages collectible and for other insurance that is in excess of the UNDERLYING LIMITS; and

1          (2)     all expenses incurred by the INSURED in the

2              investigation, negotiation, settlement and defense of any

3              claim or suit seeking such damages, excluding all salaries of

4              employees and office expense of the INSURED.

5              However, the COMPANY shall not be liable for expenses as

6              aforesaid when such expenses are included in other valid

7              and collectible insurance, except where that insurance is

8              subject to at least 100 percent reimbursement by the

9              INSURED.

10 Ex. A, § III.l; Ex. B, § III.l; Ex. C, § III.l; Ex. D, § III.l; Ex. E, § III.n; Ex. F, § III.n.

11     15.     The AEGIS policies define "OCCURRENCE" as

12              (1) an accident; or (2) an event; or (3) continuous or

13              repeated exposure to conditions which results in BODILY

14              INJURY, PERSONAL INJURY OR PROPERTY

15              DAMAGE.  All damages arising out of such exposure to

16              substantially the same general conditions shall be considered

17              as arising out of one OCCURRENCE.

18 Ex.A, § III.i; Ex. B, § III.i; Ex. C, § III.i; Ex. D, § III.i; Ex. E, § III.i; Ex.

19 F, § III.i.

20     16.     The Sempra entities have complied with all terms and conditions

21 precedent contained in the AEGIS policies, to the extent not waived or otherwise

22 excused.

23                    **The Century (INA) Policies (1963-1968)**

24     17.     INA issued two policies to the Sempra entities::

25          •  Policy No. XCP 40 40, in effect from September 1, 1963, to September 1,

26             1966, with a $1,000,000 per occurrence limit of liability, excess of a

27             $100,000 SIR.  A true and correct copy of Policy No. XCP 40 40 is

28             attached hereto as Exhibit G and incorporated by reference; and

1        •    Policy No. XCP 61 19, in effect from September 1, 1966, to September

2            23, 1968, with a $1,000,000 per occurrence limit of liability, excess of a

3            $100,000 SIR.   A true and correct copy of Policy No. XCP 61 19 is

4            attached hereto as Exhibit H and incorporated by reference.

5    18.     The INA policies define "Insured" to include

6            Pacific Lighting Corporation . . . Central Plants, Inc. . . . and

7            all allied, affiliated, proprietary and subsidiary corporations

8            or organizations whether named or not and the successors or

9            assigns of the foregoing. . . .

10 Ex. G, End. 2.

11    19.     The INA Policies obligate Century, as successor-in-interest to INA, to

12            pay on behalf of [Sempra] all sums . . . which [Sempra]

13            becomes legally obligated to pay

14            (a) by reason of the liability imposed by law . . . or liability

15            which is or may be assumed or imposed under contract,  . . .

16            or other agreement . . . for damages . . . because of personal

17            injury, including death at any time resulting therefrom.

18 *Id.*, Insuring Agreement, I.(a); Ex. H, Insuring Agreement, I.(a).

19    20.     The INA policies define "Personal injury" to mean "bodily injury,

20 sickness, disease, disability, shock, mental anguish, and mental injury."  Ex. G,

21 Conditions, C.3; Ex. H, Conditions, C.3.

22    21.     The INA Policies also obligate Century, as successor-in-interest to INA,

23 to defend Sempra against claims and suits:

24            [I]n the event of an occurrence resulting in claims or suits in

25            excess of  [Sempra's] retention, . . . [Century] shall,  upon

26            the written request of . . . [Sempra] take full charge of such

27            investigation or litigation at its own cost and expense.

28 Ex. G, Conditions, E; Ex. H, Conditions, E.

DICKSTEIN
SHAPIRO LLP

COMPLAINT

DOCSLA-122311

22.     The INA policies define "Occurrence" as

[a] series of accidents or events arising out of an initial

accident or event or originating cause, including all resultant

or concomitant losses, shall, for the purpose of this

insurance be deemed a single occurrence whether at one

location or more than one location.

Ex. G, Conditions, C.1; Ex. H, Conditions, C.1.

23.     The Sempra entities have complied with all terms and conditions precedent contained in the INA policies, to the extent not waived or otherwise excused.  The Sempra entities are entitled to the full benefits and protections provided by the INA policies.

## THE *BHHS* LITIGATION

24.     On June 9, 2003, the first of a series of eight related lawsuits spearheaded by Erin Brokovich was filed against the Sempra entities, and others.  A true and correct copy of the *Moss v. Venoco* complaint is attached hereto as Exhibit I and incorporated by reference.  This complaint is a representative sample of the complaints filed in the *BHHS* litigation.  The *BHHS* plaintiffs— residents, former students, and workers at BHHS—alleged personal injuries caused by certain of the Sempra entities' emission, release, discharge, and venting of toxic chemicals from the Central Plant into the air, soil, water, environment, and atmosphere of the BHHS campus and the surrounding community.  The lawsuits included over 900 plaintiffs alleging continuous injuries from exposure to toxins beginning in 1965, when the Central Plant began operating at BHHS and continuing thereafter, with injuries allegedly occurring in each of the years that the Insurers had insured the Sempra entities.

25.     The *BHHS* plaintiffs claimed that they were exposed to certain chemicals from three sources, including the Central Plant located next to BHHS, which provides heating and cooling to much of Century City.  The *BHHS* plaintiffs alleged claims

1   against Central Plants as the operator of the plant.  They also alleged claims against

2   Sempra Energy Solutions, Sempra Energy Global Enterprises, Pacific Enterprises, and

3   Sempra Energy.   The *BHHS* plaintiffs based these claims on the notion that these

4   entities were the alleged alter egos of Central Plants.  The *BHHS* plaintiffs sought to

5   recover hundreds of millions of dollars.

6        26.     On August 5, 2005, the eight lawsuits were consolidated and 12 trial

7   plaintiffs were selected.  After extensive discovery and discovery motion practice, in

8   June and July 2006, the defendants, including the Sempra entities, brought motions for

9   summary judgment against all 12 trial plaintiffs on grounds that the plaintiffs could

10   not show that the chemicals at issue could or did cause the plaintiffs' cancers.  The

11   Sempra entities also moved for summary adjudication on the *BHHS* plaintiffs' claims

12   for punitive damages, intentional infliction of emotional distress, battery, and strict

13   liability for ultra-hazardous activity.  In November 2006, following extensive briefing,

14   the trial court granted the summary judgment motions.  Final judgment was entered on

15   January 31, 2007, against the 12 *BHHS* plaintiffs with respect to nearly all of the

16   defendants, including the Sempra entities.  The *BHHS* plaintiffs appealed in March

17   2007.  Certain cross-appeals were filed and briefing continued into 2009.

18        27.     While the appeals were pending, the parties in the *BHHS* litigation

19   engaged in settlement negotiations.  In July 2010, the parties reached a settlement

20   agreement in principle.  Between July 2010 and August 2012, the parties negotiated a

21   master settlement agreement, with releases being secured from all of the plaintiffs

22   (some of the releases required the court's assistance).  Finally, on October 26, 2012,

23   after approving motions for good faith settlement, the court dismissed Sempra from

24   the *BHHS* litigation.

25        28.     From the inception of the *BHHS* litigation in 2003 until the settlement

26   was finalized in 2012, the Sempra entities paid millions of dollars in defense fees and

27   costs.  Although one of the Sempra entities' insurers paid a portion of the Sempra

28

1  entities' defense fees and costs in the *BHHS* litigation, the Sempra entities are still

2  owed millions in defense fees and costs.

3  <u>**AEGIS'S BREACH OF ITS DUTIES**</u>

4      29.    The Sempra entities notified AEGIS of the *BHHS* litigation on September

5  9, 2003.

6      30.    On October 8, 2003, AEGIS reserved its rights to deny coverage for the

7  *BHHS* litigation under its 2002-03 policy (not at issue here) on the grounds that the

8  pollution exclusions in that policy barred coverage for the *BHHS* litigation.  The

9  AEGIS policies at issue in this lawsuit do not contain the pollution exclusions AEGIS

10  relied on in its October 8, 2003, letter.  AEGIS also advised the Sempra entities that

11  AEGIS was not obligated to defend the Sempra entities or pay for the Sempra entities'

12  defense in the *BHHS* litigation.

13      31.    On February 28, 2005, the Sempra entities notified AEGIS of additional

14  lawsuits filed in the *BHHS* litigation.  The Sempra entities also advised AEGIS that it

15  sought coverage for the *BHHS* litigation under the AEGIS policies in effect from 1980

16  to 1985.

17      32.    On March 31, 2005, AEGIS responded to the Sempra entities' February

18  28, 2005, letter, reiterating its position that it "believes that this matter raises

19  significant questions as to whether any insurance coverage exists under any AEGIS

20  policy, for any BHHS related claims brought against Sempra Energy or its

21  subsidiaries."  AEGIS also stated that "no AEGIS Policy contains a defense

22  obligation.  Accordingly, AEGIS is not obligated to provide or pay for defense costs .

23  . . . until it is determined after conclusion of plaintiff's claims that these matters

24  involved ULTIMATE NET LOSS, as defined under the applicable policy."  AEGIS

25  took this position even though nothing in its policies excused it from indemnifying the

26  Sempra entities for defense fees and costs until the conclusion of the *BHHS* litigation.

27      33.    On May 24, 2005, the Sempra entities responded to AEGIS's March 31,

28  2005, letter explaining why AEGIS's position, *i.e.*, that it was not obligated to pay for

**DICKSTEIN**
**SHAPIRO LLP**

DOCSLA-122311

1 defense fees and costs until the *BHHS* litigation was resolved, was contrary to

2 California law.

3      34.     On July 9, 2010, the Sempra entities also advised AEGIS, and the other

4 Insurers, that the parties in the *BHHS* litigation had agreed in principle to a settlement.

5      35.     Thereafter, through October 2012, the Sempra entities continued to

6 communicate with AEGIS about the *BHHS* litigation, updating AEGIS on the status

7 of the litigation and renewing its requests that AEGIS pay for the defense of the

8 *BHHS* litigation and fund any settlement of the *BHHS* litigation.  AEGIS continued to

9 refuse to do so, thereby continuing to breach its duties to the Sempra entities.

10      36.     On August 2, 2012, the Sempra entities advised AEGIS, and the other

11 Insurers, that the final "opt out" plaintiff had signed the release and the court had set

12 deadlines for the hearings on motions for good faith settlement.  Sempra also advised

13 AEGIS that although two of the Sempra entities' insurers had agreed to fund part of

14 the settlement, the Sempra entities still would be forced to pay the majority of the

15 settlement.  The Sempra entities again asked AEGIS to fund at least part of the

16 settlement.

17      37.     On September 26, 2012, the Sempra entities provided AEGIS, and the

18 Insurers, additional information about the settlement, including that the Sempra

19 entities had to fund the settlement by October 18, 2012.

20      38.     On or about October 18, 2012, Sempra Global and two of its Insurers

21 funded the *BHHS* litigation settlement on behalf of the Sempra entities.  On October

22 26, 2012, the plaintiffs filed dismissals with prejudice against the Sempra entities.  To

23 date, AEGIS has not paid any portion of the Sempra entities' defense fees and costs

24 incurred in the *BHHS* litigation or any part of the settlement of the *BHHS* litigation.

25      39.     On March 27, 2013, Continental Insurance Company, one of the Sempra

26 entities' insurers that funded a portion of the defense fees and costs incurred in the

27 *BHHS* litigation, filed a lawsuit against AEGIS and U.S. Fire Insurance Company

28 (another one of the Sempra entities' former insurers) (the "2013 Contribution

lawsuit") seeking contribution from AEGIS and U.S. Fire for amounts Continental paid towards the Sempra entities' defense in the *BHHS* litigation.  The 2013 Contribution lawsuit only involved defense fees and costs and did not seek contribution for indemnity.  Sempra Energy is informed and believes, and on that basis alleges, that on the eve of trial in the 2013 Contribution lawsuit, AEGIS agreed to settle with Continental and paid it a confidential sum.  Nevertheless, AEGIS continues to refuse to pay the Sempra entities any part of their defense fees and costs incurred in the *BHHS* litigation or any part of the settlement of the *BHHS* litigation.

40.     AEGIS had a duty to construe its policies' coverage in light of California law, and AEGIS knew, or reasonably should have known, that it was obligated to consider its policies in light of California law.

41.     AEGIS knew, or should have known, of the following California law and insurance industry standards regarding the interpretation of insurance policies, and regarding its duties to defend and indemnify, when it made, and continued to make, its coverage determinations:

a.  Coverage exclusions and limitations are strictly construed against the insurer and liberally interpreted in favor of the insured;

b.  An insurer's failure to use limiting language gives rise to the inference that the parties intended not to so limit coverage;

c.  Even if an insurer's interpretation of a policy provision is considered reasonable, it still will not prevail on that interpretation unless it establishes that its interpretation is the only reasonable one;

d.  An insurer is required to reimburse an insured's defense fees and costs as they are incurred;

e.  An insurer is required to acknowledge an insured's claim within 15 days of receipt and begin its investigation of the claim;

f.  An insurer is required to provide its insured with notification every 30 days that it needed additional time to conduct its investigation and/or

specify what additional information it required in order to make its
determination and state any continuing reasons for its inability to
make a determination; and

g. An insurer may not give greater consideration to its own interests than
to its insured's interests.

42.     Each ground that AEGIS asserted for not paying for the Sempra entities'
defense in the *BHHS* litigation or contributing any part of its policy limits to the
*BHHS* litigation settlement was unreasonable and incorrect in light of applicable
California law and insurance industry standards.

43.     AEGIS has taken the positions it has taken and acted in the manner
alleged above notwithstanding the facts stated above.  Furthermore, AEGIS has done
so even though:

a. The Sempra entities' interpretation of the policies' language is
reasonable; and

b. AEGIS's position is contrary to the policies' provisions and the
Sempra entities' reasonable expectations, and renders illusory
coverage for the Sempra entities' claim.

44.     AEGIS's refusal to contribute anything toward the Sempra entities'
defense or indemnity, without any proper basis, constitutes a denial of coverage and a
breach of AEGIS's duties to the Sempra entities, and further establishes that AEGIS
acted contrary to insurance industry customs, practices, and standards.

## CENTURY'S BREACH OF ITS DUTIES

45.     Sempra Energy is informed and believes, and on that basis alleges, that
Century has succeeded to obligations under certain insurance policies issued to Pacific
Lighting and/or Central Plants by INA.

46.     On February 22, 2005, the Sempra entities provided notice of the *BHHS*
litigation to Century and asked Century to "fully investigate, defend and indemnify

[Sempra] . . . and reimburse [Sempra] for all sums that [it has] incurred, or may incur, in the defense of [the *BHHS* litigation]" under the INA policies.

47.     On March 23, 2005, Century responded to the Sempra entities' tender, stating (incorrectly) that because INA's policies were excess of underlying policies and/or retentions, Century owed no duties to the Sempra entities until the Sempra entities established that the underlying limits or retentions have been exhausted. Century also purported to reserve its rights based on "applicable law, or other policy provisions, conditions, terms, or exclusions."

48.     On May 16, 2005, the Sempra entities advised Century that it had incurred and paid far in excess of the $100,000 SIR under the INA policies in defense fees and costs in the *BHHS* litigation.  As a result, the Sempra entities again asked Century to defend and indemnify Sempra.

49.     On July 26, 2005, Century again denied that it had a duty to defend the Sempra entities.

50.     On January 11, 2006, the Sempra entities provided Century with an update on the status of the *BHHS* litigation and the additional amount the Sempra entities had incurred in defense fees and costs in connection with the *BHHS* litigation. The Sempra entities also asked INA to acknowledge its duties to the Sempra entities under its policies.

51.     On January 20, 2006, Century again denied that it had a duty to defend the Sempra entities, again claiming that it had no obligation to the Sempra entities because the Sempra entities had not shown satisfaction of the SIR by the payment of indemnity costs.

52.     On November 2, 2006, the Sempra entities again asked Century to defend and indemnify the Sempra entities.

53.     On November 15, 2006, Century responded to the Sempra entities' request, stating that "to date, [Century has] not been apprised that any occurrence has

or will result in claims or lawsuits in excess of the insurer's retention (excluding costs and expenses relating to investigation, settlement or litigation)."

54.     Subsequently, however, the Sempra entities had a conversation with Century in which Century's claims adjuster acknowledged Century's duty to defend and, in March 2007, the adjuster requested copies of the Sempra entities' defense invoices.

55.     On April 30, 2007, Continental filed a lawsuit against Century and U.S. Fire Insurance Company (another one of Sempra's former insurers) (the "2007 Contribution lawsuit") seeking contribution from Century, under the INA policies, and U.S. Fire for amounts Continental paid towards the Sempra entities' defense in the *BHHS* litigation.   The 2007 Contribution lawsuit only involved defense fees and costs and did not seek contribution for indemnity.

56.     On May 10, 2007, the Sempra entities sent Century copies of the Sempra entities' defense invoices, along with an "Invoice Detail by Matter" showing that defense fees and costs through May 18, 2006 far exceeded the SIR in the INA policies.  The Sempra entities sent this information to Century based in part on the conversation the Sempra entities had with Century's claim adjuster wherein the adjuster acknowledged Century's duty to defend.

57.     On May 21, 2007, Century denied that it had ever acknowledged its duty to defend the Sempra entities under any of its policies for the *BHHS* litigation.

58.     On June 6, 2007, the Sempra entities responded to Century's May 21, 2007, letter, stating that in the Sempra entities' "discussions with Tamika Jones, the [prior] claims adjuster assigned to [the *BHHS* litigation claim] . . . she acknowledged a duty to defend by Century to the Sempra Entities."  The Sempra entities further stated that it "proceeded in [its] dealings with Century based upon, and in reliance on, these discussions.  Therefore, we are surprised by the position [Century has] taken, and by Century's failure to honor its defense duty or even pay a single penny towards the defense of its insureds."

59.     On June 27, 2007, Century responded to the Sempra entities June 6, 2007, letter, stating only that INA "disagree[s] with many of the allegations and conclusions in [Sempra's] June 6, 2007 letter" and that "Century . . . continue[s] to reserve all rights, and intend[s] to waive none."

60.     After Continental filed the 2007 Contribution lawsuit, Sempra Energy is informed and believes, and on that basis alleges, that Century, without advising the Sempra entities, agreed to reimburse Continental for 25% of the defense fees and costs Continental had paid, thus acknowledging its duty to defend.  Although Century agreed to reimburse Continental, Century never paid the Sempra entities for any of their defense fees and costs.

61.     On July 2, 2010, the Sempra entities demanded that Century contribute the INA policies' limits toward funding a possible settlement of the *BHHS* litigation.

62.     On July 7, 2010, Century responded to the Sempra entities' demand, stating that it would only contribute 9.5% of the total settlement amount.

63.     On July 9, 2010, the Sempra entities advised Century and the Insurers that the parties in the *BHHS* litigation had agreed in principle to a settlement.

64.     On July 22, 2010, Century repeated that it would fund only 9.5% of the *BHHS* litigation settlement.

65.     Over the next two years, the Sempra entities provided regular updates to Century, and the other Insurers, about the status of the *BHHS* settlement.

66.     On August 2, 2012, the Sempra entities again demanded that Century contribute the INA policies' full limits toward the settlement.  The Sempra entities also reiterated that they disagreed with Century's position that it was only obligated to fund 9.5% of the settlement.

67.     On September 26, 2012, the Sempra entities provided Century, and the other Insurers, with additional information about the settlement, including that the Sempra entities had to fund the settlement by October 18, 2012.

68.     On or about October 18, 2012, Century funded 9.5% of the *BHHS* litigation settlement, forcing the Sempra entities to pay the majority of the *BHHS* settlement.   Century refused and continues to refuse to contribute anything further toward the settlement and still has not paid the Sempra entities for any part of their outstanding defense fees and costs.

69.     Century had a duty to construe its policies' coverage in light of California law, and Century knew, or reasonably should have known, that it was obligated to consider its policies in light of California law.

70.     Century was aware, or should have known, of the following California law and insurance industry standards regarding the interpretation of insurance policies, and regarding its duties to defend and indemnify, when it made, and continued to make, its coverage determinations:

    a.   The duty to defend is implied in all liability insurance policies unless the policy clearly and unambiguously excludes such a duty;

    b.   The duty to defend arises as soon as the tender is made, before liability is established, and apart therefrom;

    c.   An insurer's duty to defend is separate and independent from any other insurer's duty to defend and the insurer must provide a complete defense to its insured;

    d.   An insurer is required to reimburse an insured's defense fees and costs as they are incurred;

    e.   Coverage exclusions and limitations are strictly construed against the insurer and liberally interpreted in favor of the insured;

    f.   An insurer's failure to use limiting language gives rise to the inference that the parties intended not to so limit coverage;

    g.   Even if an insurer's interpretation of a policy provision is considered reasonable, it still will not prevail on that interpretation unless it establishes that its interpretation is the only reasonable one;

h.  An insurer is required to acknowledge an insured's claim within 15 days of receipt and begin its investigation of the claim;

i.  An insurer is required to provide its insured with notification every 30 days that it needed additional time to conduct its investigation and/or specify what additional information it required in order to make its determination and state any continuing reasons for its inability to make a determination; and

j.  An insurer may not give greater consideration to its own interests than to its insured's interests.

71.     Each ground that Century asserted for not defending the Sempra entities, or paying them for any portion of their defense fees and costs, or contributing its full policy limits to the *BHHS* litigation settlement was unreasonable and incorrect in light of applicable California law and insurance industry standards.

72.     Century has taken its positions notwithstanding the facts stated above. Furthermore, Century has done so even though:

a.  The Sempra entities' interpretation of the policies' language is reasonable; and

b.  Century's position is contrary to the policies' provisions and the Sempra entities' reasonable expectations, and renders illusory, at a minimum, Century's duty to defend.

73.     Even though Century has admitted its defense obligation by agreeing to reimburse Continental and its indemnity obligation by contributing a miniscule percentage of the *BHHS* litigation settlement, Century improperly failed and refused to pay defense fees and costs and indemnity to the Sempra entities.  As a result, the Sempra entities have been forced to pay a substantial portion of its defense fees and costs (those not reimbursed by Continental) and the majority of the *BHHS* litigation settlement.  Century not only has denied coverage for the unpaid portions of the defense fees and costs and settlement without any proper basis, but it also has

breached its other duties and acted contrary to insurance industry customs, practices, and standards.

## FIRST CAUSE OF ACTION

### (Breach of Contract (Duty to Pay Defense Fees and Costs) against AEGIS

74.     Sempra Energy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 73, above.

75.     The *BHHS* litigation sought damages on account of an alleged "Occurrence" as that term is defined under the AEGIS Policies.

76.     AEGIS has a duty under its policies to indemnify the Sempra entities for their defense fees and costs incurred in the *BHHS* litigation.  AEGIS's duty arose at the time of notice and continued thereafter.

77.     AEGIS breached its duty to pay the Sempra entities' defense fees and costs by failing and refusing to pay any portion of the Sempra entities' defense fees and costs.

78.     As a direct and proximate result of AEGIS's breach of its duty to pay the Sempra entities' defense fees and costs, the Sempra entities have been damaged in an amount in excess of the jurisdictional limit, plus interest.

## SECOND CAUSE OF ACTION

### Breach of Contract (Duty to Indemnify) against AEGIS

79.     Sempra Energy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 78, above.

80.     The *BHHS* litigation sought damages on account of an alleged "Occurrence" as that term is defined under the AEGIS Policies.

81.     AEGIS is obligated under its Policies to indemnify the Sempra entities for the *BHHS* litigation settlement.

82.     AEGIS breached its duty to indemnify the Sempra entities by failing and refusing to pay or contribute anything toward the *BHHS* litigation settlement.

83.     As a direct and proximate result of AEGIS's breach of its duty to indemnify, the Sempra entities have been damaged in an amount in excess of the jurisdictional limit, plus interest.

## THIRD CAUSE OF ACTION

### (Breach of Contract (Duty to Defend) against Century)

84.     Sempra Energy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 83, above.

85.     The *BHHS* litigation sought damages on account of "Personal Injury" as that term is defined under the INA Policies.

86.     Century, as successor-in-interest to INA, had a duty to defend Sempra in the *BHHS* litigation.  Century's duty to defend arose at the time of tender and continues until the Sempra entities have been fully reimbursed for all of their outstanding defense fees and costs.

87.     Century admitted that it had a duty to defend the Sempra entities by, among other things, agreeing to reimburse Continental for 25% of the defense fees and costs paid by Continental.

88.     Century breached its duty to defend the Sempra entities by refusing to defend and refusing to pay any portion of the Sempra entities' defense fees and costs incurred throughout the *BHHS* litigation.

89.     As a direct and proximate result of Century's breach of its duty to defend under the INA policies, the Sempra entities have been damaged in an amount in excess of the jurisdictional limit, plus interest.

## FOURTH CAUSE OF ACTION

### (Breach of Contract (Duty to Indemnify) against Century)

90.     Sempra Energy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 89, above.

91.     The *BHHS* litigation sought damages on account of "Personal Injury" as that term is defined under the INA Policies.

DICKSTEIN
SHAPIRO LLP

19
COMPLAINT

92.     Century is obligated under the INA Policies to indemnify the Sempra entities for the *BHHS* litigation settlement.

93.     Century breached its duty to indemnify by refusing to pay its policy limits to fund the *BHHS* litigation settlement.

94.     As a direct and proximate result of Century's breach of its duty to indemnify, the Sempra entities have been damaged in an amount in excess of the jurisdictional limit, plus interest.

## FIFTH CAUSE OF ACTION

### (Tortious Breach of the Implied Covenant of
### Good Faith and Fair Dealing against AEGIS)

95.     Sempra Energy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 94, above.

96.     Implied in AEGIS's policies is a covenant that AEGIS would act in good faith and deal fairly with the Sempra entities, that it would do nothing to interfere with the rights of the Sempra entities to receive the benefits due under AEGIS's policies, and that it would give at least the same level of consideration to the Sempra entities' interests as it gave to its own.

97.     In the course of denying coverage and failing and/or refusing to defend or indemnify the Sempra entities, AEGIS breached the implied covenant of good faith and fair dealing by, among other things

- failing to acknowledge receipt of the Sempra entities' claim within 15 days of receipt of the Sempra entities' claim in violation of  CCR, Title 10, § 2965.5(b);

- failing and refusing to defend Sempra or reimburse any of the Sempra entities' defense fees and costs incurred in connection with the *BHHS* litigation;

- asserting grounds for denying coverage that it knew, or should have known, were not supported by, and in fact were contrary to, the terms of

DICKSTEIN
SHAPIRO LLP

DOCSLA-122311

its policies, the law, insurance industry custom and practice, and the facts, including that (i) the AEGIS policies were not obligated to respond until after the conclusion of the plaintiffs' claims in the *BHHS* litigation, (ii) the AEGIS policies were not required to respond in the existence of the Sempra entities' other available insurance, (iii) certain claims took place either before or after the AEGIS polices; and (iv) the AEGIS policies do not require AEGIS to fund any settlement;

- failing to conduct an adequate investigation of the *BHHS* litigation, and asserting grounds for denying coverage based on its inadequate investigation;

- failing to provide the Sempra entities with notification every thirty (30) days that it needed additional time to conclude its investigation and/or specify what additional information AEGIS required in order to make its determination and state any continuing reasons for its inability to make a determination, thereby violating CCR, Title 10, § 2695.7(c)(1);

- failing to honor its promises and representations in its policies that it would defend and indemnify the Sempra entities in matters, such as the *BHHS* litigation, involving covered claims for personal injuries;

- failing and refusing to contribute up to the limits of its policies toward the reasonable settlement of the *BHHS* litigation;

- ignoring California law and insurance industry standards;

- giving greater consideration to its own interests than to the Sempra entities' interests; and

- otherwise acting as alleged above.

98.   AEGIS did the things and committed the acts alleged above for the purpose of consciously withholding from the Sempra entities the rights and benefits to which the Sempra entities were entitled under the AEGIS policies and without considering the interests of the Sempra entities to at least the same extent as it

DICKSTEIN
SHAPIRO LLP

21
COMPLAINT

DOCSLA-122311

considered its own interests.  AEGIS's acts were inconsistent with the reasonable expectations of its insureds, were contrary to established claims practices and legal requirements, and therefore constitute bad faith.

99.     As a direct and proximate result of AEGIS's acts and omissions, the Sempra entities have been damaged in an amount to be proven at trial.  These damages include the unreimbursed fees and costs that the Sempra entities incurred in defense of, and the unreimbursed portion of the settlement of, the *BHHS* litigation, plus interest.

100.     Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), Sempra Energy is entitled to recover all attorneys' fees and costs that the Sempra entities reasonably have incurred, and are incurring, in their efforts to obtain the policy benefits that AEGIS wrongfully withheld, and is withholding, in bad faith, plus interest, in an amount to be proven at trial.

101.     AEGIS's conduct was despicable and was done with a conscious disregard of the Sempra entities' rights, constituting oppression, fraud, and/or malice, in that AEGIS engaged in a series of acts designed to deny the benefits due under AEGIS's policies.  Specifically, AEGIS, through the acts and omissions alleged above, and in light of information, facts, and relevant law to the contrary, consciously disregarded the Sempra entities' rights and forced the Sempra entities to incur substantial financial losses, without any assistance from AEGIS, to the Sempra entities' substantial financial damage.  AEGIS ignored the Sempra entities' interests and concerns, with the requisite intent to injure within the meaning of California Civil Code section 3294.  Therefore, Sempra Energy is entitled to recover punitive damages from AEGIS in an amount sufficient to punish and to make an example of AEGIS and in order to deter similar conduct.

////

## SIXTH CAUSE OF ACTION

### (Tortious Breach of the Implied Covenant of

### Good Faith and Fair Dealing against Century)

102.    Sempra Energy realleges and incorporates by reference herein each allegation contained in paragraphs 1 through 101, above.

103.    Implied in INA's policies is a covenant that Century would act in good faith and deal fairly with the Sempra entities, that it would do nothing to interfere with the rights of the Sempra entities to receive the benefits due under INA's policies, and that it would give at least the same level of consideration to the Sempra entities' interests as it gave to its own.

104.    In the course of denying coverage and failing and/or refusing to defend or fully indemnify the Sempra entities, Century breached the implied covenant of good faith and fair dealing by, among other things

- failing to acknowledge the Sempra entities' claim within 15 days of receipt of the Sempra entities' claim in violation of California Code of Regulations ("CCR"), Title 10, § 2965.5(b);

- failing and refusing to defend the Sempra entities in the *BHHS* litigation and failing and refusing to reimburse the Sempra entities for any part of the Sempra entities' defense fees and costs incurred in the *BHHS* litigation;

- asserting grounds for initially denying coverage that it knew, or should have known, were not supported by, and in fact were contrary to, the terms of its policies, the law, insurance industry custom and practice, and the facts, including that: (i) the INA policies were excess only, (ii) the INA policies did not provide defense coverage until after indemnity payments had been made, (iii) it owed no direct obligation to Sempra while it secretly reimbursed Continental at artificially low rates, and, (iv)

imposing arbitrary allocation theories to limit the amount of indemnity it paid the Sempra entities;

- failing to conduct an adequate investigation of the *BHHS* litigation, and asserting grounds for denying coverage based on its inadequate investigation;

- failing to provide the Sempra entities with notification every 30 days that it needed additional time to conclude its investigation and/or specify what additional information Century required in order to make its determination and state any continuing reasons for its inability to make a determination, thereby violating  CCR, Title 10, § 2695.7(c)(1);

- failing to honor its promises and representations in its policies that it would defend and indemnify the Sempra entities in matters, such as the *BHHS* litigation, involving covered claims for personal injuries;

- failing and refusing to contribute its policy limits to the *BHHS* litigation settlement;

- ignoring California law and insurance industry standards;

- giving greater consideration to its own interests than to the Sempra entities' interests; and

- otherwise acting as alleged above.

105.    Century did the things and committed the acts alleged above for the purpose of consciously withholding from the Sempra entities the rights and benefits to which the Sempra entities was entitled under the INA policies.  Century's acts were inconsistent with the reasonable expectations of its insureds, were contrary to established claims practices and legal requirements, and therefore constitute bad faith.

106.    As a direct and proximate result of Century's acts and omissions, the Sempra entities have been damaged in an amount to be proven at trial.  These damages include the unreimbursed fees and costs that the Sempra entities incurred in

1    defense of, and the unreimbursed portion of the settlement of, the *BHHS* litigation,

2    plus interest.

3        107.    Pursuant to the holding in *Brandt v. Superior Court*, 37 Cal. 3d 813

4    (1985), Sempra Energy is entitled to recover all attorneys' fees and costs that the

5    Sempra entities have reasonably incurred, and are incurring, in their efforts to obtain

6    the policy benefits that Century wrongfully withheld, and is withholding, in bad faith,

7    plus interest, in an amount to be proven at trial.

8        108.    Century's conduct was despicable and was done with a conscious

9    disregard of the Sempra entities' rights, constituting oppression, fraud, and/or malice,

10   in that Century engaged in a series of acts designed to deny the benefits due under the

11   INA policies.  Specifically, Century, through the acts and omissions alleged above,

12   and in light of information, facts, and relevant law to the contrary, consciously

13   disregarded Sempra's rights and forced the Sempra entities to incur substantial

14   financial losses, without any assistance from Century, to the Sempra entities'

15   substantial financial damage.  Century ignored the Sempra entities' interests and

16   concerns, with the requisite intent to injure within the meaning of California Civil

17   Code section 3294.  Therefore, Sempra Energy is entitled to recover punitive damages

18   from Century in an amount sufficient to punish and to make an example of Century

19   and in order to deter similar conduct.

20       WHEREFORE, Sempra prays for judgment as follows:

21                    **ON THE FIRST CAUSE OF ACTION**

22       1.    For damages, plus interest, according to proof at the time of trial.

23                   **ON THE SECOND CAUSE OF ACTION**

24       2.    For damages, plus interest, according to proof at the time of trial.

25                    **ON THE THIRD CAUSE OF ACTION**

26       3.    For damages, plus interest, according to proof at the time of trial.

27                   **ON THE FOURTH CAUSE OF ACTION**

28       4.    For damages, plus interest, according to proof at the time of trial.

## ON THE FIFTH CAUSE OF ACTION

5.     For damages, including reasonable attorneys' fees and expenses incurred in obtaining the benefits due under the AEGIS policies, plus interest, according to proof at the time of trial.

6.     For punitive damages in an amount to be determined at the time of trial;

## ON THE SIXTH CAUSE OF ACTION

7.     For damages, including reasonable attorneys' fees and expenses, incurred in obtaining the benefits due under the INA policies, plus interest, according to proof at the time of trial.

8.     For punitive damages in an amount to be determined at the time of trial;

## ON ALL CAUSES OF ACTION

9.     For costs of suit incurred herein; and

10.     For such other, further, and/or different relief as may be just and proper.

DATED: October 15, 2014     DICKSTEIN SHAPIRO LLP

By:   /s/ Kirk A. Pasich
Kirk A. Pasich
Attorneys for Plaintiff

DOCSLA-122311

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action.

DATED:  October 15, 2014          DICKSTEIN SHAPIRO LLP


                                  By:    /s/  Kirk A. Pasich
                                        Kirk A. Pasich
                                        Attorneys for Plaintiff